**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| METAL RESOURCE SOLUTIONS, INC.<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION; AND THE UNITED STATES OF AMERICA,<br><br>Defendants. | Court No. 26-05057 |

**COMPLAINT**

1. Plaintiff Metal Resource Solutions, Inc. (hereinafter "Plaintiff"), by and through its attorneys, alleges and states as follows:

**SUMMARY AND NATURE OF THIS ACTION**

2. This action challenges Defendants' imposition of tariffs under the International Emergency Economic Powers Act ("IEEPA"). From February 1, 2025 to February 24, 2026, President Trump, through a series of Executive Orders, invoked IEEPA as authority to impose tariffs ("IEEPA tariffs") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff has paid these IEEPA tariffs on its imported goods.

3. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v.*

*Trump*, No. 24-1287, 2026 WL 477534, at *14 (U.S. Feb. 20, 2026) (affirming V.*O.S. Selections, Inc. v. United States*, 149 F.4th 1312 (Fed. Cir. 2025)).

4. This separate action is necessary to permit Plaintiff to obtain its own judgment and any necessary judicial orders to implement the decision of the Supreme Court, including to direct Defendants to refund the unlawfully collected IEEPA tariffs paid by Plaintiff. On the merits, Plaintiff asks this Court to hold for it precisely what the Supreme Court has affirmed: that the IEEPA tariffs imposed by Defendants and the underlying Executive Orders that directed them are unlawful.[1]

5. Plaintiff paid tariffs that were imposed under IEEPA, and U.S. Customs and Border Protection ("CBP") continues to hold those unlawfully paid tariffs. Plaintiff seeks relief from all actual and impending final liquidations to ensure that its right to a complete refund is not jeopardized.

6. Accordingly, Plaintiff seeks (i) a declaration that the IEEPA tariffs are unlawful and (ii) an order directing CBP to provide a full refund from Defendants of all IEEPA tariffs Plaintiff has paid to the United States as a result of the Executive Orders challenged in this lawsuit, plus interest thereon.

## JURISDICTION AND STANDING

7. The Court possesses subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 704, 706.

---

[1] The United States takes the position that injunctive relief ordering refunds of the unlawfully collected tariffs that are finally liquidated may only be ordered by this Court via importer-specific orders for importers who are plaintiffs that have filed an action with this Court. *See* Opening Br. for Appellants at 6, 19, *V.O.S. Selections, Inc. v. Trump*, Nos. 2026-1895, -1897, -1899 (Fed. Cir. Aug. 10, 2026), Dkt. No. 19.

8. 28 U.S.C. § 1581(i)(1)(B) provides that "the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," and "administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)–(h) of this section." *Id.* § 1581(i)(1)(D).

9. Here, the claims at issue relate to Executive Orders that made amendments to the Harmonized Tariff Schedule of the United States ("HTSUS"). The HTSUS is a law of the United States setting tariffs; thus, this Court possesses subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i). *See Learning Resources, Inc.*, 2026 WL 477534, at *6.

10. The APA provides that "{a}gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Further, the APA provides for broad judicial review of agency actions brought by "person{s} suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.

11. This Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

12. Plaintiff has standing to bring this lawsuit because it is the importer of record for goods imported into the United States from countries subject to the unlawful IEEPA tariffs as implemented and collected by CBP. As a result of the Executive Orders challenged by this

lawsuit, Plaintiff has paid IEEPA tariffs to the United States and thus has suffered injury caused by those Executive Orders. Declaratory and injunctive relief from this Court would redress this injury.

**PARTIES**

13. Plaintiff is an importer that has made entries of merchandise that were subject to IEEPA tariffs and has either deposited or paid the additional duties assessed under the IEEPA tariffs.

14. Defendant CBP is a component agency of the U.S. Department of Homeland Security ("DHS") headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs, duties, and taxes on goods imported into the United States.

15. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

16. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B). Defendants are referred to collectively in this complaint as "CBP."

**TIMELINESS OF THIS ACTION**

17. An action under 28 U.S.C. §1581(i) must be commenced within two years after the cause of action first accrues. 28 U.S.C. § 2636(i).

18. Plaintiff is timely commencing this action under 28 U.S.C. § 1581(i) by concurrently filing a summons and complaint within two years after the cause of action first accrued. The claims asserted by Plaintiff accrued at the earliest on February 4, 2025, the effective date of the President's first Executive Order invoking IEEPA to impose tariffs. Exec. Order No. 14,195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the*

*People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025) ("*China Tariff Order*").

## GENERAL PLEADINGS

### I. President Trump Orders a Series of Tariffs, Invoking IEEPA as the Basis for this Authority

#### A. The IEEPA Tariffs

19. On February 1, 2025, President Trump issued three Executive Orders imposing tariffs on imports from Canada, Mexico, and China. Each Executive Order was premised on IEEPA authorizing the tariffs, and for each set of tariffs, President Trump claimed that they were justified under IEEPA because of a purported national emergency. Collectively, these are referred to in this complaint as the "Trafficking Tariff Orders."

20. The Executive Order directed at Mexico, Executive Order 14,194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025) ("*Mexico Tariff Order*"), imposed an additional 25 percent tariff on the import of goods from Mexico. The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept {drug trafficking organizations}, other drug and human traffickers, criminals at large, and illicit drugs." *Id.* at 9,118.

21. The Executive Order directed at Canada, Executive Order 14,193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025) ("*Canada Tariff Order*"), declared an emergency because of opioid trafficking, and also imposed a 25 percent tariff, with certain exceptions.

22. Finally, the Executive Order directed at China, Executive Order 14,195, also declared an emergency because of opioid trafficking, declaring that "the sustained influx of

synthetic opioids" was a national emergency and that "{m}any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." *China Tariff Order*, 90 Fed. Reg. at 9,121. The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and drugs into the United States" and "the failure of the {People's Republic of China} government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other {transnational criminal organizations}, criminals at large, and drugs." *Id.* at 9,122 (internal citations omitted).

23. The *China Tariff Order* imposed an additional 10 percent *ad valorem* tariff on products from China imported into the United States on top of existing duties. *Id.* at 9,122.

24. Four days later, on February 5, 2025, the President issued another Executive Order, Executive Order 14,200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025) ("*February 5 Amendment*").

25. The next month, on March 3, 2025, the President again amended the China Tariff Order through Executive Order 14,228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025). The March 3 Amendment raised the incremental tariffs on imports from China to 20 percent and justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis." *Id.* at 11,463.

26. On April 2, 2025, citing trade deficits with our trading partners as its own national emergency, President Trump issued Executive Order 14,257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual*

*United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("*Reciprocal Tariff Order*"). The Reciprocal Tariff Order imposed a 10 percent baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on imports from 57 individual countries, effective April 9. *Id.* at 15,045, 49-50 (Annex I). These higher country-specific tariffs ranged from 11 percent to 50 percent. *Id.*

27. The *Reciprocal Tariff Order* asserts that "U.S. trading partners' economic policies … suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *Id*. at 15,041.

28. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34 percent to 84 percent. Exec. Order No. 14,259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

29. The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84 percent to 125 percent. Exec. Order No. 14,266, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025). Meanwhile, the 20 percent trafficking tariff on imports from China remained in place, such that most imports from China faced a minimum 145 percent IEEPA tariff (125 percent plus 20 percent).

30. In implementing the Executive Order-based tariff regime, the President directed CBP to effectuate changes to the HTSUS, requiring that goods subject to the challenged tariffs be entered under new tariff codes under Chapter 99 of the HTSUS.

31. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections, Inc. et al. v. Donald J. Trump, et al.*, No. 25-00066, ECF. No. 2 (Ct. Int'l Trade Apr. 14, 2025). As discussed below, this Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed.

32. In the months since the *V.O.S. Selections* complaint was filed, President Trump, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying others. On July 30, 2025, the President invoked IEEPA to impose additional tariffs on imports from Brazil because "{r}ecent policies, practices, and actions of the Government of Brazil threaten the national security, foreign policy, and economy of the United States." Exec. Order No. 14,323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739 (Aug. 5, 2025) ("*Brazil IEEPA Order*"). Additionally, on August 6, 2025, the President also invoked IEEPA to impose additional tariffs on imports from India because the "Government of India is currently directly or indirectly importing Russian Federation Oil." Exec. Order No. 14,329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 11, 2025) ("*Russian Federation IEEPA Order*"). All of the Executive Orders described above have been modified by the President.[2] As explained below, IEEPA does

[2] *See, e.g.*, Exec. Order No. 14,197, *Progress on the Situation at Our Northern Border*, 90 Fed. Reg. 9,183 (Feb. 10, 2025); Exec. Order No. 14,198, *Progress on the Situation at Our Southern Border*, 90 Fed. Reg. 9,185 (Feb. 10, 2025); Exec. Order No. 14,226, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11,369 (Mar. 6, 2025); Exec. Order No. 14,227, *Amendment to Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 11,371 (Mar. 6, 2025); Exec. Order No. 14,231, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11,785 (Mar. 11, 2025); Exec. Order No. 14,232, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Southern Border*, 90 Fed. Reg. 11,787 (Mar. 11, 2025); Exec. Order No. 14,256, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China as Applied to Low-Value Imports*, 90 Fed. Reg. 14,899 (Apr. 7, 2025); Exec. Order No. 14,298, *Modifying Reciprocal Tariff Rates to Reflect Discussions With the People's Republic of China*, 90 Fed. Reg. 21,831 (May 21, 2025); Exec. Order No. 14,316, *Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30,823 (July 10, 2025); Exec. Order

not authorize the President to impose tariffs. By this complaint, Plaintiff challenges all executive orders discussed above where, as held by the Supreme Court, the President unlawfully invoked IEEPA to issue tariffs ("IEEPA Tariffs"). *See Learning Resources, Inc.*, 2026 WL 477534, at *14.

**B. CBP's Implementation of the Unlawful Tariffs**

33. CBP is charged with the assessment and collection of duties, including the IEEPA tariffs. *See* 19 U.S.C. §§ 1500, 1502, 1505.

34. CBP has effectuated the collection of unlawful IEEPA tariffs through its prior CSMS guidance.[3]

---

No. 14,325, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 37,957 (Aug. 6, 2025); Exec. Order No. 14,326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963 (Aug. 6, 2025); Exec. Order No. 14,334, *Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China*, 90 Fed. Reg. 39,305 (Aug. 14, 2025); Exec. Order No. 14,346, *Modifying the Scope of Reciprocal Tariffs and Establishing Procedures for Implementing Trade and Security Agreements*, 90 Fed. Reg. 43,737 (Sept. 10, 2025); Exec. Order No. 14,357, *Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 50,725 (Nov. 7, 2025); Exec. Order No. 14,358, *Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China*, 90 Fed. Reg. 50,729 (Nov. 7, 2025); Exec. Order No. 14,360, *Modifying the Scope of the Reciprocal Tariffs With Respect to Certain Agricultural Products*, 90 Fed. Reg. 54,091 (Nov. 25, 2025); Exec. Order No. 14,361, *Modifying the Scope of Tariffs on the Government of Brazil*, 90 Fed. Reg. 54,467 (Nov. 26, 2025).

[3] *See, e.g.*, U.S. Customs & Border Prot., CSMS # 64297449, Guidance: Additional Duties on Imports from Canada (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d519e9; U.S. Customs & Border Prot., CSMS # 64297292, Guidance: Additional Duties on Imports from Mexico (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d5194c; U.S. Customs & Border Prot., CSMS # 64299816, Update – Additional Duties on Imports from China and Hong Kong (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d52328; U.S. Customs & Border Prot., CSMS # 64680374, Guidance – Reciprocal Tariffs, April 5 and April 9, 2025, Effective Dates (Apr. 8, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3daf1b6.

35. Subsequent to the Supreme Court's decision in *Learning Resources*, CBP discontinued the collection of duties that had been imposed pursuant to IEEPA under specific executive orders.[4]

**C. Liquidation**

36. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the entry based on its customs declaration (Customs Form 7501), which asserts a value, origin, and HTSUS classification for the imported goods. *See* 19 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods. CBP then "fix{es} the final appraisement of merchandise" by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504.

37. Liquidation—unless extended—must happen within one year. *See id.* § 1504(a). Typically, liquidation is done automatically by operation of law. As a matter of practice, CBP normally liquidates entries 314 days after the date of entry of the goods and will usually post the liquidation notice to the "Official Notice of Extension, Suspension and Liquidation" website maintained by CBP.

38. Once liquidation has occurred, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation. *See* 19 U.S.C. § 1514. CBP can

---

[4] *See, e.g.*, U.S. Customs & Border Prot., CSMS # 67834313, Ending Collection of International Emergency Economic Powers Act Duties (Feb. 22, 2026), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/40b11c9.

also voluntarily reliquidate within 90 days of the liquidation. *See id.* § 1501. But not all liquidations are protestable.

39. Where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested, and any protest would be futile. *Thomson Consumer Elecs., Inc. v. United States*, 247 F.3d 1210 (Fed. Cir. 2001); *AGS Company Automotive Solutions*, v. *United States*, Court No. 25-00255 (Ct. Int'l Trade 2025); *Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024) (explaining that "{a} protestable decision under §1514(a) requires Customs to have 'engage{d} in some sort of decision-making process'").

40. Where tariffs have been unlawfully exacted, this Court possesses the equitable authority to order refunds, with interest, of unlawfully collected tariffs, without regard to whether the underlying entry has been liquidated by CBP.

## II. The Challenged IEEPA Tariffs Are Unlawful

41. The executive orders that levied IEEPA Tariffs cite IEEPA, 50 U.S.C. § 1701 et seq., the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 as the authority to impose the tariffs at issue in this action. On February 20, 2026, the Supreme Court unequivocally ruled that IEEPA does not authorize the President to impose tariffs, *see Learning Resources, Inc.*, 2026 WL 477534, at *14, making all tariffs imposed under IEEPA unlawful.

## III. Plaintiff Paid IEEPA Tariffs

42. As of the date of this complaint, Plaintiff has paid the unlawfully imposed IEEPA tariffs.

43. Plaintiff's imports subject to IEEPA entered the United States from foreign countries under new HTSUS codes in Chapter 99 established pursuant to the unlawful Executive Orders.

## STATEMENT OF CLAIM

## THE IEEPA TARIFFS ARE *ULTRA VIRES*

44. Paragraphs 1-43 are incorporated by reference.

45. In *Learning Resources*, the Supreme Court held that the IEEPA Tariffs are not authorized by IEEPA and thus are unlawful. Accordingly, the IEEPA tariffs imposed on Plaintiff's imports were not authorized by any U.S. law and should be refunded with interest.

46. Defendants have repeatedly confirmed, both in this Court and other courts, in cases involving challenges against IEEPA tariffs, that they do not dispute the Court's authority to order reliquidation and will not oppose an order of this court ordering reliquidation, and that "such liquidation would result in a refund of all duties determined to be unlawfully assessed, with interest." *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255, 2025 WL 3634261, at *2 (Ct. Int'l Trade Dec. 15, 2025) (citing Def.'s Resp. in Opp'n to Mot. for Prelim. Inj. & Summ. J. at 42, *V.O.S. Selections*, 149 F. 4th 1312, ECF No. 32, Apr. 29, 2025).

47. In *AGS Co. Auto. Sols.*, relying on Defendant's stipulation, this Court denied the plaintiff's motion for a preliminary injunction suspending liquidation on entries for which the plaintiff has paid IEEPA tariffs. 2025 WL 3634261, at *4; *see also* Defs.-Appellants' Mot. for an Emergency Stay Pending Appeal & an Immediate Admin. Stay at 7, *V.O.S. Selections, Inc. v. Trump*, No. 25-1812 (Fed. Cir. filed May 28, 2025), May 29, 2025, ECF No. 6 (explaining that "a stay would not harm plaintiffs, who can be made whole through a refund, including interest, if tariffs paid during these appeals are ultimately held unlawful").

48. Plaintiff respectfully requests that this Court apply the binding decision of the Supreme Court and issue an order declaring the IEEPA Tariffs unlawful as to Plaintiff, and direct Defendants to refund all IEEPA tariffs collected from Plaintiff, with interest as provided by law and equity.

**DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Metal Resource Solutions, Inc. respectfully requests that this Court:

1) Declare that the President lacks authority under IEEPA to impose tariffs;

2) Declare that the IEEPA tariffs are *ultra vires* and void *ab initio* with respect to Plaintiff;

3) Enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the IEEPA tariffs with respect to Plaintiff;

4) Order Defendants to reliquidate any of Plaintiff's entries on which CBP has collected IEEPA tariffs that have liquidated, and to refund to Plaintiff all IEEPA tariffs collected on such entries, with interest as provided by law;

5) Order Defendants to refund to Plaintiff all IEEPA tariffs collected by CBP on unliquidated entries, with interest as provided by law;

6) Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

7) Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ R. Will Planert
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Edward J. Thomas III
Xi (Jack) Yang

**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Avenue, NW
Suite 800
Washington, D.C. 20036
(202) 216-4819

*Counsel to Plaintiff Metal Resource Solutions, Inc.*

Dated: November 6, 2026